## Case No. 1,990.
### BROWN v. ARBUNKLE.
[1 Wash. C. C. 484.][1]

Circuit Court, D. Pennsylvania. Oct. Term. 1806.

COURTS—JURISDICTION—EJECTMENT—PROOF—BOUNDARIES—SURVEY.

1. If the plaintiff has a right to claim the jurisdiction of the circuit court under the law, a deed which is not intended to give, and which does not give jurisdiction to the court, cannot be said to be given in fraud of the law; merely because it changes the nature of the suit, which the plaintiff has a right to maintain in the courts of the United States.

2. Every thing necessary to designate the land covered by the warrant, so as to prove it to be withdrawn from the general mass of property, and appropriated to the use of an individual, must be proved.

3. The law does not require, that in all cases, and under every possible circumstance, every line of a survey should be run and marked on the land; much less, that the doing so should be material to the validity of the survey.

4. Where the boundaries of a number of tracts of land were run and marked on the ground, as well as the interior lines, so far as to enable the surveyor to lay down each particular tract by protraction, it is sufficient.

[Cited in New Hampshire Land Co. v. Tilton, 19 Fed. 77.]

5. There is no provision in the act of assembly, which prevents the survey under a warrant for lands in "the new purchase," after two years; unless sucn survey will interfere with a title previously acquired.

6. The nature of the settlement, the warrantees of these lands were prevented from making, and to what degree the prevention should have existed.

At law. This was an ejectment to recover 400 acres of land, within the triangle lying north and west of the Ohio, Alleghany and Conewango. [Verdict for plaintiff.]

The plaintiff produced five warrants, granted to the Population Company in different names, with no other description than one

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

adjoining the other; neither of which, however, was the leading warrant. The warrants were dated 13th April, 1792. On the 6th of June, 1792, the purchase money was paid for three hundred and ninety warrants, (of which these were a part,) by the Population Company, all adjoining each other; which were sufficient to cover the whole of the triangle, after deducting the state reserves and donation lands within it. In October, 1792, these warrants were delivered to the surveyor of the district, with directions to lay them on the triangle. In June, 1794, these warrants were surveyed, by running north and south lines, wherein mile trees or posts had been previously marked or placed, to the lake; marking on this line, corner trees at the distance of so many perches from each other. Then measuring from the extremity of this line, on the lake, one mile, and marking a corner, and extending it two miles west; then south to the state line, marking corners as at the first line, and parallel thereto; then west two miles as before, and so on throughout. After completing the field work in this manner, the whole was protracted, and the different tracts laid down by protraction in one connected map; which was returned with each survey early in 1795. The plaintiff produced evidence, as on the former trials of the Holland and Population Company's suits, to prove prevention and persistence, from 1792 to 1796. The defendant set up no title in himself, but endeavoured to impeach that of the plaintiff, by evidence showing that on a late survey by order of the court, the lines as laid down in the connected plot, were not to be found; from whence it was concluded, that no actual survey had been made of these warrants: and the act of 8th April, 1785 [2 Smith's Laws Pa. 321], section 9th, was read, which declares that every survey thereafter to be returned into the land office, upon any warrant which shall be issued . after the passage of the. act, shall be made by actual going on and measuring the land, and marking the lines to be returned upon such warrant.

The counsel for the defendants, therefore, contended: 1st. That a legal survey was not made, even though it appeared to have been made in the manner stated by the plaintiff; since none of the interior lines, between the two mile north and south parallel lines, were measured or marked on the ground. 2d. That the title of the warrant holders became void, the survey not having been made in two years after their dates. 3d. That the settlement ought to have been made in two years from the date of the survey, and not of the warrant; and, consequently, reckoning from June, 1794, it was not pretended that the plaintiff was prevented from settling by enemies, from January to June, 1796. 4th. That the plaintiff, not having located his warrant within two years from the date of it, it is impossible for him to prove that

prevention existed in that part of the country where his land lay, since he might have placed it either in the triangle, or in some place very remote from it. Fourth objection to the jurisdiction repeated. See Browne v. Browne [Case No. 2,035].[2] On this last point it was argued, that, whether the conveyance to the lessor of the plaintiff was fraudulent or not; to give jurisdiction, would depend very much upon the facts in the cause; and was, therefore, a proper subject for the consideration of the jury, under the charge of the court. That this case differed from Hurst v. McNeil [Id. 6,936], as in that, the conveyance was in fee, but here for years; so that the land, when recovered, returned back into the common stock of the company.

Ingersoll and Gibson, for plaintiff.
Rawle and M. Levy, for defendant.

WASHINGTON, Circuit Justice, charged the jury. As to the last objection, we can only repeat the reasons which induced us to consider this case as within the jurisdiction of the court, when the motion was made, at the last term, to strike it off. If this deed be void, it must be for some legal defect in it, or because it was made in fraud of the law, which gives jurisdiction to the circuit court. In Hurst v. McNeil the deed was considered void, because not made with the knowledge or consent of the grantee, as to all but John, who had an equitable estate to one-third of the land. In this case, there is no legal objection to this deed, except that it is a fraud upon the law, being made to enable the plaintiff to sue in this court. But, since the plaintiff has a right to claim the jurisdiction of this court under the law, a deed which is not intended to give, and which does not give jurisdiction to the court, cannot be said to be given in fraud of the law, merely because it changes the nature of the suit, which the plaintiff has a right to maintain in this court.

The first objection to the plaintiff's title is, that the warrant was not legally surveyed; because all the lines of each tract were not run and marked on the ground. An actual survey on the ground, so as to enable the surveyor to make a specific location of the warrant, is clearly proper; because, otherwise, the grantee in the warrant, cannot fix with certainty, the spot on which his warrant is located. But, neither law nor reason requires, that, in all cases, and under every possible circumstance, every line of a survey should be run and marked on the land, much less that the doing so should be material to the validity of the survey. For instance, the closing line of a survey need not be run, and so we have determined; because it can be

2 [In this case (No. 2,035) defendant filed a bill of discovery charging that the conveyance to plaintiff was merely colorable, and designed to give the court jurisdiction, and thereafter moved, on the answer, to strike off the case, but the motion was denied as premature.]

laid down by protraction, with as much certainty as by running it. Every thing necessary to designate the land covered by the warrant, so as to prove it to be withdrawn from the general mass of property, and appropriated to the use of an individual, should be done on the ground; but, if this can be effected without running every line, every line need not be run. Now, in this case, the Population Company were substantially the owners of 390 tracts of land, adjoining each other, and, of course, in one body, though nominally there were 390 owners. The boundaries of these tracts were run and marked on the ground, as well as the interior lines, so far as to enable the surveyor to lay down each particular tract by protraction, with as much accuracy as if every line of each tract had been measured on the ground. Each tract was thus laid down in one connected plat, and returned to the surveyor general and the land office, as directed by law.[3] This, therefore, gives notice to the whole world, that the whole of the triangle was appropriated by the Population Company, and it shows the boundaries of each particular tract. What then has any third person, or even the state, to do with the particular mode in which this is effected, if no third person has, in the meantime, acquired a title to the land, or some part of it; and no such right is pretended in this cause? This point we have decided on a former occasion.

The second objection is, that the title of the warrant holder became void, because it was not surveyed in two years after its date. The first answer, which seems conclusive, is, that there is no law which declares it void, if not surveyed in two years. Generally speaking, the only penalty to which the grantee in an uncertain warrant is exposed, by not having it surveyed, is, that he cannot locate it, so as to overreach the title of an intermediate settler or warrant holder; who has acquired a title to the land by a special location of the warrant, or by a survey. There are no expressions in the act of 1792 [3 Smith's Laws, Pa. 73], which declare it void; and the reason assigned, that if it be not surveyed in two years, no vacating warrant can issue under the ninth section, will not be found to be sufficient. If pursued, it will lead to this, that an uncertain warrant, not surveyed, is void; because no vacating warrant can issue, and a vacating warrant cannot issue, because the warrant is uncertain, and has not been surveyed. If such a warrant cannot issue, because of the uncertainty of the location, it seems useless to declare it void for that reason; but, if a vacating warrant cannot issue in such a case, and this would be probably necessarily the case, since it could not be said, that the original grantee had failed to settle what had, in truth, no locality. Still, any person might acquire a title by settlement on the land, or by an original warrant; which, as before mentioned, would cut out the first warrant holder as completely as if he had located it, and then neglected to settle it, according to the terms of the ninth section.

The third objection is, that the settlement should have been made within two years from the date of the survey. This is directly in the face of the decision of the supreme court in Huidekoper v. McClean [Case No. 6,852], which fixed the time of settlement to be two years from the date of the warrant. The relative words, "next after the date of the same," in the first sentence of the ninth section of the law, clearly refer to the words, "the date of such warrant," as their antecedent. If a contrary construction be admitted, then it must go throughout, and apply to the case of a special, as well as to that of a general warrant; and, in both cases, it might give the warrant holder near four, instead of two years, to make his settlement in. The words, "the same," if they do not relate to "warrant," their immediate antecedent, refer to warrant or survey, or to warrant and survey, neither of which would answer, since they could bear different dates; it would afford no rule whatever.

The fourth objection is, that at the expiration of two years from the date of the warrant, it was perfectly uncertain where the warrants might be located; it is impossible for the plaintiff to prove, that the Population Company was prevented from making their settlements, by the enemies of the United States, on the land in question. To meet this argument, the plaintiff relies upon the testimony of the deputy surveyor, who states, that when the 390 warrants were entered, he was directed to survey them on the triangle upon the connected plat; by which, it appears, that they covered the whole triangle; and upon that paper, and the receipts for the purchase money, from which they argue that you may infer, that there was one leading warrant, to which all the rest were adjoining; and if you are satisfied, upon the evidence, that this was the fact, then the only question remaining is, whether the Population Company were, for two years after the dates of the warrants, prevented from settling on the lands in the triangle; and whether they persisted to make their settlements during that period. What kind of a settlement they were to be prevented from making, and to what degree the prevention should have existed, were stated in the charge of Huidekoper v. McClean [supra], which has been read.

Verdict for plaintiff.

[NOTE. For order requiring plaintiff to pay costs on bill of discovery, see Bowne v. Brown. Case No. 1,743; and, for attachment against

---

[3] I am strongly inclined to the opinion, that the act of 1785, is merely directory, from the very clause which directs an actual survey to be made; the survey is declared to be void, if made without a warrant, but not so, if not actually made on the ground. W.

plaintiff and his sureties for costs, see Bowne v. Arbuncle, Case No. 1,742.

[If the conveyance is bona fide, though induced by the belief of the grantor that the federal court will decide differently from the state court, the jurisdiction will be sustained. McDonald v. Smalley, 1 Pet. (26 U. S.) 620; Smith v. Kernochen, 7 How. (48 U. S.) 198; Briggs v. French, Case No. 1,871; Jones v. League, 18 How. (59 U. S.) 76. The bona fides is essential. Smith v. Kernochen, supra; Jones v. League, supra; Welles v. Newberry. Case No. 17,378; Starling v. Hawks. Id. 13,311; Hurst v. McNeil, Id. 6,936; Maxfield v. Levy. Id. 9,321. But see Browne v. Browne, Id. 2,035; Briggs v. French, supra.]