## NEW HAMPSHIRE LAND CO. *v.* TILTON and others.

(*Circuit Court, D. New Hampshire.* January 11, 1884.)

1. FOREIGN CORPORATION—POWER TO HOLD LAND.

   A corporation, even though it does little or no business in the state where it is organized, is not necessarily incapable of holding and dealing in land in another state.

2. DEED—ACKNOWLEDGMENT—AFTER EXPIRATION OF AUTHORITY.

   A deed executed by a commission empowered to convey public land may be lawfully acknowledged by the commissioners after their authority has been revoked.

3. SAME—HOW FAR ACKNOWLEDGMENT IS NECESSARY.
    An unacknowledged deed is good against all persons having actual notice of
    its existence.

4. SAME—UNCERTAINTY ARISING AFTER EXECUTION.
    A valid deed does not become void because, by reason of the loss of a plat
    referred to therein, it has become difficult to define the boundaries.

5. DEED—ESTOPPEL.
    The joint proprietors of a tract of land, who have accepted other land in ex-
    change therefor, are estopped to deny the validity of a deed executed by a part
    of them only, on behalf of all, without power of attorney.

At Law.

*W. S. Ladd, A. F. Pike, D. Barnard, C. H. Burns, J. Y. Mugridge,*
and *Chase & Streeter,* for plaintiffs.

*H. Bingham, G. A. Bingham, G. Marston, I. W. Drew, E. Aldrich, A.
S. Batchellor,* and *D. C. Remich,* for defendants.

LOWELL, J. This case has occupied some weeks in the trial, and
has, at the end, been submitted to me, as judge and jury, under the
statute. It is a land case of much importance to the parties, and to
others having similar actions now pending in the court. Notwith-
standing the great mass of documentary evidence, the points in dis-
pute are few and well defined. I will state first my findings of fact:

The plaintiffs are a corporation organized under the general laws
of Connecticut, Revision of 1875, two days before the law of that
state was modified by the act of 1880, which repealed the act of 1875.
The defendants contend that the plaintiff corporation cannot hold
lands in New Hampshire, excepting as incidental to any business
which they may carry on in Connecticut; and that a foreign corpora-
tion is not authorized to deal in lands in New Hampshire as its
principal business, or one chief part of its business. I find that there
was no evidence that the corporation carries on any business in Con-
necticut. My ruling of law is given below.

Both parties claim under the state of New Hampshire. The plain-
tiffs demand nine twenty-fourth undivided parts of the Sargent &
Elkins' grant, of about 50,000 acres, made by James Willey, land
commissioner, in October, 1831. The tract is bounded by the east-
erly line of the town of Franconia, and by the same line extended
northerly to the south-west corner of the town of Breton Woods, (now
called Carroll;) thence by the south line of Carroll to Nash & Sawyer's
location; thence by the same to the notch of the White mountains;
thence southerly by Hart's location to land granted to Jasper Elkins
and others in 1830; thence westerly to the first-mentioned bounds.
The tenants claim 36 lots of 100 acres each, to which they trace a
clear paper title from the state, beginning in 1796, provided the deeds
from the state were valid and effectual.

In 1796 the legislature appointed Edwards Bucknam, John McDuffie,
and Andrew McMillan, a committee to alter and repair the old road
leading from Conway to the Upper Coos, and to make a new road from
that road to Littleton, with power to sell, in lots of 100 acres each, lands

of the state through which this new road should pass. Lands were sold by the committee at four different public "vendues," and the tenants claim under the fourth sale. The description of the lands in the deeds of the second, third, and fourth sales is by ranges and lots on a plan of Nathaniel Snow, made by order of the committee. I find that two range lines were adopted, not precisely parallel, so that when the lots were extended there was a gore of a triangular form which remained ungranted. Nearly all of what is now the town of Bethlehem was granted by this committee. The deeds are all alike, and are carefully and well drawn, and the objections which the plaintiffs take to them apply to all. They may be spoken of, for convenience, as one deed. The objections are that one of the committee acknowledged the deed after the law appointing the commission was repealed, and that the deed is void for uncertainty in its description of the land. The plan of Snow, by which all these lots are described, cannot be found at the office of the secretary of state, if it ever was returned there, and cannot now be produced. Several copies of plans by Snow have been introduced in evidence, coming from the families of persons interested in the subject, but they differ from each other in some particulars, and no testimony shows clearly how, and when, and from what, they were severally copied. I find, however, as a fact that the copy called the "Cilley plan" contains internal evidence of having been taken from an older plan than those produced by the plaintiffs, and that it is sufficiently proved to be considered a copy of the original for the purposes of this case. I find that there was an original Snow plan by which the sales were made, and that it was made from actual knowledge of the base lines, but not from actual knowledge of the lines of the lots. I further find that the base lines being given, the lots can now be laid out upon the ground. When so laid out, the easterly part or corner will overlap the earlier grant to Nash & Sawyer; but it is not proved to my satisfaction that the committee or their surveyor knew this, but the contrary supposition is the more probable.

The grant by Willey in 1831 was made to Jacob Sargent, Jr., David Elkins, Enoch Flanders, Samuel Alexander, and John A. Prescott, and they at once sold an undivided equal interest to Joseph Robbins, so that the proprietors held by undivided sixth parts. In May, 1832, it was discovered that the road committee had conveyed away, or was supposed to have conveyed away, in 1796, all, or nearly all, of the upper portion (about one-half) of the Sargent & Elkins' grant of 1831; and thereupon an arrangement was made by which Willey granted the six proprietors another tract of about equal extent, and allowed them $50 in money, and they made a deed of quitclaim, reconveying to him for the state about 23,000 acres, by metes and bounds, in which description is embraced the lots now in controversy, excepting lot 32, in range 18, and parts of lots 30 and 32, in range 17. This deed of reconveyance in its premises, or granting

part, after the description, contained these words: "Excepting and reserving all the right and title we should have had by James Willey's deed to us, dated October 27, 1831, of the above-described tract of land, provided all or any part of [the] land mentioned in the above-named bounds has not been lawfully disposed of by the authority of the state of New Hampshire previous to the deed given to us as above mentioned." This reservation is referred to again in the *habendum* and the clause of warranty. This deed, which purported to be made by all six of the proprietors, was executed by two of them, for themselves and the others. It is proved that the arrangement was made with all the proprietors, and that they all accepted and dealt with the land granted in exchange. The proprietors proceeded to divide the remaining land, and to deal with it in severalty, and no claim was made by or under them to this upper or regranted land for some 40 years or more afterwards, when the plaintiffs' predecessors in title bought from the heirs and devisees of some of the proprietors the nine twenty-fourth parts now demanded. As to the lot, and parts of two others, which are not included in the description of the reconveyance, I find that the plaintiffs never acquired a title thereto, because they had been divided and conveyed in severalty to third persons by the proprietors before the plaintiffs' predecessors purchased their undivided interest.

I now proceed to the points of law:

1. I rule, for the purposes of this case, that the plaintiff corporation has authority to hold and deal in lands in New Hampshire.

2. I rule that the deeds from the road committee are not rendered invalid by the fact that one of the committee acknowledged them after his commission had expired. A deed in New Hampshire is good, without acknowledgment, against purchasers with notice, *Montgomery* v. *Dorion*, 6 N. H. 250; *Wark* v. *Willard*, 13 N. H. 389; and by their deed of reconveyance, the proprietors of Sargent & Elkins' grant acknowledged notice of all preceding deeds. Independently of notice, the formal act of acknowledgment could be done after the commission had expired. See *Lemington* v. *Stevens*, 48 Vt. 38, and for cases somewhat analogous; *Bishop* v. *Cone*, 3 N. H. 513; *Gibson* v. *Bailey*, 9 N. H. 168; *Welsh* v. *Joy*, 13 Pick. 477; *Fogg* v. *Willcutt*, 1 Cush. 300.

3. The burden is on the plaintiffs to prove what lands are excepted out of the reconveyance; and they have failed to show this.

4. If the base lines of the plan were known by survey when the plan was made, and can now be pointed out, both of which facts I find to be established, the deeds of the committee are not void for uncertainty. However difficult it may now be, in the confusion of the various copies of the plan, to fix the exact boundaries of particular lots, the deed of reconveyance holds good, if the lands had been once lawfully disposed of by the state. The loss of the plan cannot make deeds void which once were good. It may be found to-morrow. The deeds have been assumed and acted on as good for more than 80 years;

and, whether a true copy of the plan can now be proved or not, the plaintiffs have no title if these deeds were good when made. Immense tracts of wild land have been sold by ranges and lots upon a plan; and all the authorities agree that if the lots can be laid out upon the ground in substantial accordance with the plan, the grants are effectual. *Corbett* v. *Norcross*, 35 N. H. 99; *Browne* v. *Arbunkle*, 1 Wash. C. C. 484; *Jones* v. *Johnston*, 18 How. 150, 154; *Wells* v. *Iron Co.* 47 N. II. 235, 259.

5. The plaintiffs contend, and I find it to be true, that certain lots of the fourth sale, if the Cilley plan be taken as a copy of the Snow plan, are laid out upon land which had before been granted to Nash & Sawyer. The argument deduced from this fact against the Cilley copy is legitimate, because the committee cannot be supposed to have intended to sell land which the state did not own. I have given the argument due weight in this connection; but finding, as I do, by the preponderance of all the evidence, that the Cilley copy is substantially accurate after all arguments for and against it are considered, it merely results that the committee did undertake to grant land which turns out to be part of Nash & Sawyer's location. This mistake cannot vitiate the title to all the rest of the town of Bethlehem; but, either the persons who took those lots get nothing, or all the lots abate in proportion. It does not matter in this case which of these alternatives is the true one.

6. The deed of reconveyance is to be considered the act of all six of the proprietors, though no power of attorney by which two of them executed the deed for the others is produced, because, by accepting the lands granted in exchange, they were estopped to deny that they authorized the execution of the deed.

My verdict, therefore, is (1) that the plaintiff corporation has not proved a title to the 36 lots in dispute; (2) that the defendants have proved a title to the same.

Sixty days are given the parties to file exceptions. If the plaintiffs except, the defendants have the right to except to my ruling as to the authority of the plaintiffs to hold lands in New Hampshire.