## LYBRAND et al. v. ALLEN.

Circuit Court of Appeals, Fourth Circuit.
January 10, 1928.

### No. 2656.

1. **Mortgages ⊜137—Conveyance subject to purchase-money mortgage conveys merely equity of redemption.**

When land is conveyed, and a mortgage executed to secure the purchase price, the practical effect of the transaction is to convey merely the equity of redemption.

2. **Bankruptcy ⊜188(9)—Mortgage and note executed by bankrupt for land conveyed by his father in carrying out plan of securing father's creditors, held valid as respects bankrupt and his trustee.**

Where bankrupt's father, being in financial difficulties and owning considerable realty, adopted the plan of conveying separate parcels of land to bankrupt at an agreed price and taking notes and mortgages therefor, which he hypothecated with his various creditors as security for existing and future indebtedness, held that, in the absence of fraud or bad faith, a note and mortgage so executed by bankrupt was valid, and neither bankrupt nor his trustee could retain the property and at the same time repudiate mortgage.

3. **Bankruptcy ⊜217(1)—Burden was on mortgagor's bankruptcy trustee to show mortgage was paid or released.**

Burden was on mortgagor's bankruptcy trustee, suing to enjoin mortgage foreclosure action in state court, to show that mortgage had been paid or released.

4. **Bankruptcy ⊜217(1)—Evidence held not to sustain burden on mortgagor's bankruptcy trustee of proving that mortgage had been paid or released.**

In bankruptcy trustee's suit to enjoin mortgage foreclosure action in state court, brought by subsequent holder of mortgage, evidence held not to sustain burden on trustee of showing that mortgage executed by bankrupt had been paid or released.

**5. Executors and administrators ☞59—Presumption is that administrators of transferee of mortgage and secured notes, in possession thereof, are owners of instruments.**

Administrators of transferee of mortgage and note secured thereby, who had possession of such instruments, are presumed to be owners thereof, entitled to proceed with mortgage foreclosure action in state court.

**6. Mortgages ☞239—Mortgagor's bankruptcy trustee could not question validity of transfer of mortgage and notes from subsequent holder to bankrupt's brother, where transfer was made as result of payments by mortgage.**

Even if note and mortgage securing it, given by bankrupt to his father to secure payment of price of realty conveyed by father, were transferred to bankrupt's brother by father's creditor, with whom mortgage had been hypothecated to secure indebtedness of father, as result of payments by father, so that father's estate was entitled to the transfer of such instruments, bankrupt's trustee could not question validity of such transfer, since neither he nor his estate were entitled thereto, but validity thereof could only be questioned by father's bankruptcy trustee, or his executors or creditors.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Aiken; Ernest F. Cochran, Judge.

Suit by Ernest L. Allen, trustee in bankruptcy of J. C. Lybrand and another, against J. C. Lybrand and others. Decree for plaintiff, and defendants appeal. Reversed.

William M. Smoak, of Aiken, S. C., for appellants.

D. W. Robinson, of Columbia, S. C. (Herbert E. Gyles, of Aiken, S. C., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This suit was instituted by the trustee in bankruptcy of J. C. Lybrand to enjoin the prosecution in a court of the state of South Carolina of a suit brought to foreclose a mortgage on a tract of land title to which was held by the bankrupt at the time of his adjudication. After it was instituted, the trustee filed a petition in the bankruptcy proceeding, asking that he be allowed to sell the land in controversy free of liens, and the proceeding thus instituted was consolidated with the suit for injunction. A final decree was entered in the consolidated causes, which granted the injunction, directed that the mortgage be canceled, and ordered that the land be sold by the trustee free of liens. The correctness of this decree is the matter challenged by the appeal before us.

The foreclosure suit, the prosecution of which was enjoined, was instituted by J. C. Lybrand's brother, C. R. Lybrand, who claimed to be the owner and holder of a note for $30,000 secured by mortgage on the tract of land in controversy. This note and mortgage were executed by the bankrupt, J. C. Lybrand, to his father, J. W. Lybrand, and were by J. W. Lybrand indorsed and transferred to Barrett & Co., cotton dealers of Augusta, Ga., as security for existing and future indebtedness. Some time thereafter J. W. Lybrand was adjudged bankrupt, and after the bankruptcy the note and mortgage were transferred by Barrett & Co. to C. R. Lybrand. J. W. Lybrand died prior to the institution of the injunction suit, and his executors were made defendants with C. R. Lybrand and J. C. Lybrand. C. R. Lybrand died before the hearing in the court below, and his administrators were made parties in his stead. A rule to show cause, based upon the petition to sell the land free of liens, was served upon the trustee in bankruptcy of J. W. Lybrand, who was thus made a party also to that proceeding.

The bill of complaint in the suit for injunction alleged that the mortgage sought to be foreclosed was executed as a matter of form between J. C. and J. W. Lybrand, and was not given for a valuable consideration; that C. R. Lybrand was not in fact the owner of the note and mortgage; and that the suit for foreclosure was collusive and fraudulent, and had been instituted for the purpose of depriving the creditors of J. C. Lybrand of the benefit of the mortgaged property. A joint answer was filed by C. R. Lybrand, J. C. Lybrand, and the executors of J. W. Lybrand. It denied that the mortgage was executed without consideration or as a matter of form, or that there was fraud or collusion in its execution, or in the institution of the suit for foreclosure. It alleged that the note and mortgage were given for the purchase price of the tract of land; that J. W. Lybrand had hypothecated them with Barrett & Co. more than four months prior to his bankruptcy; and that they had been assigned by Barrett & Co. to C. R. Lybrand, who had paid for them out of his own means and assets. It further alleged that J. C. Lybrand had paid nothing on the note, and that prior to his bankruptcy he was in default under the mortgage, and that C. R. Lybrand had entered into possession of the mortgaged premises and was entitled to the foreclosure. The trustee in bankruptcy of

J. W. Lybrand made no return to the notice to show cause, and asserted no claim to the note or mortgaged premises.

Much evidence was taken before a master, who reported it to the court without passing upon the facts. From this evidence it appears that J. W. Lybrand, the father of J. C. and C. R. Lybrand, had for many years prior to 1921 been engaged in business at Wagener, S. C. Early in 1921 he became financially embarrassed and was endeavoring to satisfy his creditors, so that he might continue in business. He owned considerable real estate in and near Wagener, and he adopted the plan of conveying this in separate parcels to his son, J. C. Lybrand, at an agreed price, and taking from J. C. Lybrand notes for the purchase price secured by mortgages on the land conveyed, which he hypothecated with his various creditors as security for existing and future indebtedness. Pursuant to this plan J. W. Lybrand, on February 4, 1921, conveyed to J. C. Lybrand the tract of land in controversy, at the price of $30,000, taking from him a note and purchase-money mortgage for that amount, which he hypothecated with Barrett & Co., to whom he owed a large sum of money. Other notes of J. C. Lybrand, secured by mortgages on other tracts of land, which had been thus conveyed to him, were hypothecated by J. W. Lybrand with banks, fertilizer companies, and others of his creditors. All of these deeds and purchase-money mortgages were duly placed on record, and there is no evidence that in any of the transactions there was any fraud or concealment, or any advantage taken of any of the creditors of either party. On the contrary, the plan seems to have been conceived and carried through in perfect good faith and to have resulted in dividing up the security of J. W. Lybrand's real estate among his principal creditors, and in giving them, in addition thereto, the personal obligation of J. C. Lybrand. No question arises or could arise as to the pledge of the notes and mortgages constituting voidable preferences under the Bankruptcy Act, as they were pledged more than a year prior to J. W. Lybrand's bankruptcy.

J. W. Lybrand was adjudged bankrupt early in 1922. At that time he owed Barrett & Co. a balance of approximately $140,000, and that firm still held the note and mortgage of J. C. Lybrand as collateral security thereto; but these were not much security for so large a debt, as real estate had declined in value, and the tract of land embraced in the mortgage was estimated to be worth only around $5,000. Barrett & Co. continued to hold the note and mortgage, however, until the latter part of that year, when they transferred them to C. R. Lybrand, along with certain accounts and chattel mortgages belonging to the J. W. Lybrand estate, which they had purchased at a sale for J. W. Lybrand and at his request. J. W. Lybrand was unable to pay for these accounts and mortgages, and they were transferred to C. R. Lybrand and charged to and paid for by him.

There is no doubt, upon the evidence, that the note and mortgage came into the possession of C. R. Lybrand. There is some dispute as to how Barrett & Co. came to part with them. A member of that firm testified that, after the bankruptcy of J. W. Lybrand, Barrett & Co., to save themselves the loss of the $140,000 balance due by him on account, bought cotton futures for him, which they carried in a secret account for his benefit; that the profit from these transactions extinguished the balance due on the old account; and that, when this was done, the note and mortgage held as collateral were surrendered. His testimony as to how and when they were surrendered is rather vague. Opposed to this is the positive testimony of a number of witnesses to the effect that they were transferred to C. R. Lybrand, and that the transfer occurred when the chattel mortgages and accounts which were purchased by Barrett & Co. and ultimately charged to C. R. Lybrand were turned over to him. We think that the correctness of this version of the matter is established by the clear weight of the evidence, although it may be true, also, that the willingness of Barrett & Co. to transfer the note and mortgage with the other papers was due to the fact that their losses had been recouped from the profits realized from the secret account, as to which testimony was given. How the papers came to be transferred to C. R. Lybrand is, we think, unimportant. The important thing is that they were transferred to him, and as to this we think that upon the evidence there can be no doubt.

The trustee contends that the account of C. R. Lybrand with Barrett & Co. was in reality the account of J. W. Lybrand, and that the payments appearing to be made by C. R. Lybrand were in fact made by his father; but we do not think that the evidence sustains this contention. After J. W. Lybrand filed his petition in bankruptcy, C. R. Lybrand borrowed money on a life insurance policy, and with this and with what credit he could muster at the local bank entered into business. Doubtless the fact that

he was the son of J. W. Lybrand helped him to establish connections and to pick up business which his father had formerly handled, and among other connections established was one with Barrett & Co. This connection enabled him to do an extensive business in cotton, as he could ship the cotton when purchased and draw against Barrett & Co. for the price, and in this way do a large business on little money. All of this cotton he sold to Barrett & Co. in his own name, depositing the collections from the sales to his own credit in the local bank. His father may have aided and assisted him in carrying on this business, and it appears, also, that Barrett & Co. charged against his account certain obligations of his father; but it is clear that the business was carried on by C. R. Lybrand in his own name and on his own credit, and we think the evidence is conclusive that it was his business and not the business of his father. The fact that he paid to Barrett & Co. obligations of his father is, we think, not necessarily inconsistent with his ownership of the business, but, on the other hand, furnishes a satisfactory reason why collateral pledged by his father to Barrett & Co. should have been delivered to him.

The trustee in bankruptcy, representing creditors of J. W. Lybrand, has made no claim to the note and mortgage in controversy. The executors of J. W. Lybrand do not claim them, but, as heretofore stated, have filed answer alleging that they belong to the estate of C. R. Lybrand. There is no evidence that J. C. Lybrand ever paid anything on them, or that they have ever been canceled or extinguished.

[1, 2] Upon these facts, the first question which arises is as to the initial validity of the note and mortgage, and, as to this, we can see no reason why they are not valid. The execution of the note and mortgage by J. C. Lybrand was the consideration for which the land in controversy was deeded to him; and certainly neither he nor his trustee in bankruptcy, who merely succeeds to his rights, can hold onto the property and at the same time repudiate the mortgage. 21 C. J. 1210; 41 C. J. 443; New Hampshire Land Co. v. Tilton (C. C.) 19 F. 73. It was not intended that J. C. Lybrand should take anything by the conveyance to him, except the land subject to the mortgage, or the equity of redemption therein; and the rule applicable in such cases is that, when land is conveyed, and a mortgage thereon executed to secure the purchase money, the practical effect of the transaction is to convey merely the equity of redemption. 41 C. J. 458; In re Hays

(C. C. A. 6th) 181 F. 674. To hold in this case that the note and mortgage are void would be to hold that the conveyance to J. C. Lybrand vested in him an unincumbered title to the land, when it is clear that all that it was intended that he should get was an equity of redemption subject to the mortgage. The mortgage cannot be held void on the ground that its execution was a fraud on the creditors of J. C. Lybrand; for it embraced nothing except the property deeded to him in consideration of its execution, and by no stretch of the imagination could the mortgaging of this property be said to injure his creditors.

[3, 4] The next and crucial question in the case is whether the mortgage has been satisfied or not, and as to this we think there can be but one answer. There is no evidence whatever that J. C. Lybrand ever paid one penny towards its satisfaction or that it has ever been canceled or released. On the contrary, the note and mortgage were held uncanceled by C. R. Lybrand prior to his death, and are now held by his administrators. J. C. Lybrand testified that he had paid nothing thereon, and that the mortgage had not been released, but was valid and outstanding in the hands of the administrators of his brother. There is no evidence that J. W. Lybrand ever intended to give the property embraced in the mortgage to J. C. Lybrand free of encumbrances, or to release the mortgage against it in his favor; and it is not likely that he would have done so, as he must have known that J. C. Lybrand was hopelessly insolvent, and that a release of the mortgage would have benefited only his creditors. The burden of showing that the mortgage had been paid or released rested upon complainants. Gowdy v. Gowdy, 83 S. C. 349, 65 S. E. 385; Talbert v. Talbert, 97 S. C. 136, 81 S. E. 644; Graham v. Anderson, 42 Ill. 514, 92 Am. Dec. 89; 41 C. J. 793. We think it is clear that this burden has not been met.

[5, 6] The only remaining question is whether the administrators of C. R. Lybrand are the owners and holders of the note and mortgage, and are therefore entitled to proceed with the foreclosure. As stated above, they have possession of these papers and the presumption is that they own them. Talbert v. Talbert, supra; 41 C. J. 707. As shown above, they were transferred to C. R. Lybrand by Barrett & Co., who unquestionably had good title to them. Even if it be assumed that J. W. Lybrand made the payments to Barrett & Co., which secured the transfer of the papers to C. R. Lybrand, and that he

or his estate were entitled to the transfer, we do not see how this helps the trustee of J. C. Lybrand. The validity of the transfer to C. R. Lybrand in such case would be a question which might be raised by J. W. Lybrand, his creditors, or his executors; but it would not concern J. C. Lybrand or his creditors or his trustee in bankruptcy. 5 C. J. 940; Blackford v. Westchester Fire Ins. Co. (C. C. A. 8th) 101 F. 90. If, upon the payment to Barrett & Co., the creditors of J. W. Lybrand whose claims existed prior to his bankruptcy had any right in the papers released by the payment, this was a right to be asserted, not by the trustee in bankruptcy of J. C. Lybrand, but by the trustee in bankruptcy of J. W. Lybrand, and that trustee is making no such claim. If subsequent creditors or J. W. Lybrand himself claimed any interest in the papers, this was a claim to be asserted by his executors. These executors are parties to the suit, and they not only do not make any claim to the note and mortgage, but admit that they belong to C. R. Lybrand, and have filed answer making this admission a matter of record, and thereby effectually estopping themselves from ever claiming any interest in them. It is too clear for argument that, if in fact J. W. Lybrand did own an interest in the papers, this estoppel would inure, not to the benefit of the mortgagor, who has not paid the mortgage, but to the benefit of C. R. Lybrand's estate, and would effectually transfer any interest of J. W. Lybrand in the papers to the administrators of C. R. Lybrand.

It follows that the order directing a sale by the trustee in bankruptcy and enjoining the administrators of C. R. Lybrand from proceeding with foreclosure should be reversed, and the foreclosure allowed to proceed; and this result, we think, accords with the equities as well as with the law applicable in the case. J. C. Lybrand gave nothing for the property in controversy except the note and mortgage, and nothing is taken from his creditors which they were ever led to believe that he owned. If Barrett & Co. still held the note and mortgage as collateral, there could be no doubt as to their right to foreclose. If J. W. Lybrand had paid off his debt to them by money earned after he was adjudged a bankrupt, and had taken an assignment to himself, there could be no doubt as to his right to foreclose; and where the note and mortgage have been transferred to C. R. Lybrand, whether through purchase from Barrett & Co., or through action of J. W. Lybrand or his executors, we see no reason why C. R. Lybrand should not be allowed to proceed with the foreclosure also.

Interesting questions were raised as to the admissibility of certain evidence offered by complainants, but in the view which we take of the case it is not necessary to consider these.

Reversed.