## TOWN OF LEMINGTON v. STEVENS.

### *Lease. Selectmen. Assumpsit.*

Two of plaintiff's selectmen leased a ministerial lot, with other lots that could be leased perpetually, "as long as wood grows and water runs, *or as we the selectmen have a right to lease the same.*" *Held,* that the alternative clause in the *habendum* must be construed to have reference to that class of lots that the statute limited the time for which they could be leased, and that the lease was good as to such lots.

A lease is good as against the lessor although not acknowledged; and if the lessee enters under such lease, and conforms to the terms thereof, the rights of the parties are to be governed thereby.

A lease of public lands by selectmen, may be acknowledged by them after the expiration of their term of office.

If a *tort feasor* be sued for money had and received from the sale of timber cut and converted by him, but the plaintiff only seeks to recover the net proceeds of the timber, and the defendant has not received enough to pay the expense of cutting and marketing the same, the plaintiff cannot recover.

GENERAL ASSUMPSIT. Plea, the general issue, and trial by jury, September Term, 1874, REDFIELD, J., presiding.

Plaintiff called defendant as a witness, who testified that in the winter of 1872-3, he cut about 420 thousand feet of spruce timber from lot No. 48 in the second division in Lemington, known as the minister lot, and drawn to the right of the first settled minister in said town; that he hauled said timber to Connecticut River, and then sold and delivered it to the McIndoes Lumber

Company at seven dollars per thousand ; that it cost him about $4.50 per thousand to cut, haul, and deliver it ; that said company paid him toward the same, from time to time, in cash, $1,300, and gave him an order of $998 on one Danforth for the balance, which had not been paid at the commencement of this suit. Plaintiff then rested.

Defendant then gave in evidence a lease from A. T. Holbrook and A. E. Frizzell, a majority of the selectmen of Lemington, to Rollin W. Holbrook, dated December 31, 1870, and acknowledged December 26, 1872, after their term of office had expired, whereby they leased to the said Rollin W. Holbrook and his assigns, all the public lands in Lemington, including the lot in question and other lots that could be leased perpetually, with the privileges and appurtenances thereof, *habendum*, " as long as wood grows and water runs, or as we the said selectmen have a right to lease the same," yielding and paying the yearly rent of six dollars for each of the 2d division lots, and three dollars for each of the 3d division lots, amounting to $33 in all, conditioned that said lease should become void if said rent, or any part thereof, should be in arrear thirty days ; and whereby the said Rollin W. Holbrook, for himself and his assigns, covenanted, among other things, that before cutting any wood or timber on any of said lots, full and ample security should be given for all damage to said lots occasioned by such cutting, in default of which, said lease to become void.

Said Rollin W. Holbrook assigned said lease to the defendant before the cutting complained of, and it was conceded that the defendant cut and disposed of said timber claiming title under said lease.

It appeared that the rent reserved had been seasonably paid or tendered to the treasurer of Lemington ever since the lease was executed, and that before entering upon said lot, the defendant offered to secure the town for whatever damage he might do in cutting and hauling off the timber from the lots mentioned in said lease, by paying into the town treasury the sum of $550 in cash, to remain forever, in order that the interest thereof might be used to pay said annual rent. Said lots were wild and uncleared, val-

uable only for the wood and timber standing and growing thereon, and were of no value to the lessee, except for the purpose of cutting wood or lumbering thereon. It further appeared that the agents and officers of the town had refused to receive the annual rent due under said lease, as well as the $550, all which had been tendered to them as aforesaid by the defendant. The town had never demanded any other or different security under said lease than what the defendant tendered, and defendant testified that he never gave nor intended to give other or further security.

No question was made that defendant's title was fraudulently obtained.

Plaintiff's counsel claimed the right to recover the value of the stumpage taken from said lot and sold by the defendant, under that part of the lease requiring security to be given for cutting wood and timber as aforesaid, and insisted that the lease was void, for that two of the selectmen had no authority under the statute to execute it without the concurrence of the third ; also, for that the selectmen attempted to lease the land for a longer term than five years ; also, for that the acknowledgment of the lease by the selectmen after their term of office had expired, was of no effect. They also claimed that defendant's entry and cutting was a trespass, and that, the defendant having sold the timber and received the money therefor, the tort might be waived, and assumpsit for money had and received maintained.

The defendant's counsel objected that the action could not be maintained, and asked the court to direct a verdict for the defendant ; but the court held, *pro forma*, that the action could be maintained, and that plaintiff was entitled to recover ; to which the defendant excepted.

*Ray, Drew & Heywood* and *Geo. A. Bingham*, for the defendant.

*Geo. N. Dale*, for the plaintiff.

The opinion of the court was delivered by

REDFIELD, J. This is an action in assumpsit in the general counts. The plaintiff seeks to recover the stumpage value of tim-

ber cut and drawn from lot No. 48 in said town, drawn to the right of the first settled minister. The selectmen of towns, by statute, have the right to lease such lands for five years, or until a minister shall be settled. Gen. Sts. c. 27, s. 3. Two of the selectmen of said town executed a lease of this lot, including sev-. eral other lots sequestered to other uses (upon which the statute imposes no restraint or limit as to time), to one Holbrook and his heirs and assigns, " as long as wood grows and water runs, or as we the selectmen have a right to lease the same." Holbrook assigned his right under the lease to the defendant. . The lease was not acknowledged until after the selectmen who had executed it had gone out of office.

I.   It is claimed that the lease is void because it attempts to grant a longer term than the statute allows. But we think that the alternative in the lease had reference to the limitation in the statute as to this class of lands. And the term was without limit as to a portion of the lots, and as to this lot, it was so long " as we the selectmen have a right to lease the same."

II.   It is claimed that the lease is inoperative because not acknowledged. But as to the grantor the lease was obligatory. Gen. Sts. c. 65, s. 1, *et seq.* And when the grantee goes into possession under a written agreement, and conforms to the terms of it, the rights of the parties are to be regulated by the *terms of the contract.*

But this lease was duly acknowledged December 26, 1872, after the selectmen went out of office ; and we think that such acknowledgment was effectual. The 11th section of said chapter provides for citing the grantor before a magistrate, to appear and acknowledge his deed ; and if he declines, the magistrate may take proof of its execution ; and if satisfactory, may endorse the fact of such proof on the deed, which shall make the deed effectual. We do not see why a subsequent *voluntary* acknowledgment should not be as good as one by compulsion.

III.   The case shows that the defendant offered to give a guaranty against damage to the lot by cutting and removing the tim-

6

ber ; and if the guaranty offered was not a compliance with the requirement in the lease, the plaintiff docs not proceed on the ground that the lease has been *avoided* by act of the defendant, but rather that the lease was never operative.

IV.   If the defendant could be regarded as a *tort feasor* in removing the timber, still, as the plaintiff avows that he seeks to recover the net proceeds, or the value of the " *stumpage*," the defendant has not *received* sufficient to pay him for cutting and marketing the timber, unless the unpaid order on Danforth for the balance, $998, is to be treated as money in defendant's hands, which, we think, may admit of grave doubts.

Judgment of the County Court is reversed, and cause remanded.