## LEWIS AND LEACH ASSIGNEES v. BURLINGTON SAVINGS BANK.

*Insolvency. When conveyance can be recovered as preference. Contemplation of insolvency. May recover value of mortgage. Interest. Construction of report.*

1. In a suit by an assignee in insolvency to recover the value of a payment made within four months, a finding by a referee that a debtor was insolvent at the time of the payment, in the sense that his liabilities exceeded his assessts, that the debtor intended a preference, and that the payment was received by the defendant having reasonable cause to believe that the debtor was insolvent in the above sense, necessarily imports the further fact that the defendant had reasonable cause to believe that the payment was made in fraud of the insolvent law, and entitles the plaintiff to a recovery.

2. And "contemplation of insolvency" of that kind is the same thing in this respect as actual insolvency.

3. The creditor gave to the defendant a mortgage as a part of the fraudulent preference, and the defendant afterwards and before the bringing of this suit sold the mortgage note for its full face value. *Held*, that the plaintiffs could recover of the defendant the amount received from the sale of this note, but not the value of the mortgaged premises.

4. It not appearing that the plaintiffs made any demand on the defendant before the commencement of suit, interest should be computed from the date of service.

5. *Held*, that the evidence as reported by the referee, supported his findings that the creditor was insolvent, that he made the payment intending a preference, and that the defendant received it having reasonable cause to believe that the creditor was insolvent or in contemplation of insolvency.

Assumpsit by the plaintiffs, as assignees in insolvency of Albert Sowles, to recover the value of certain preferences paid the defendant by said Sowles, within four months of the filing of the petition in insolvency. Heard at the September term, 1889,

Franklin county, Tyler J., presiding, upon the report of a referee. Judgment *pro forma* for the plaintiffs to recover the amount of the cash payments and the value of the mortgaged premises. The defendant excepts.

In April, 1882, the defendant loaned $5,000 to Wilbur P. Davis, J. R. Armington, Edward A. Smith, and Albert Sowles, the insolvent, for which it took their joint and several promissory note, on three months time. This note was renewed from time to time, the last renewal being dated October 22, 1883.

From the time the loan was made until the time of said last renewal, the officers of the defendant bank had no particular knowledge as to the amount or situation of the property of any of the signers. Davis had been for many years clerk of the Franklin County Court, and was reputed to be solvent. Very little importance was attached to the liability of Armington and Smith. Sowles was, and had been for many years, cashier of the First National Bank of St. Albans, and was reputed to be one of the wealthy men of Franklin county.

The application for renewal, October 22, 1883, was addressed to the treasurer of the defendant and was approved by one of its investment committee. Subsequently it came before the full board and it was then suggested by some one that the signers of this note were engaged in stock speculations in the New York market. Thereupon it was voted that this last renewal should be approved, but that upon its maturity, the note must be paid or secured by mortgage.

On the 12th and 14th of January, 1884, there was a run on the First National Bank of St. Albans, and some $50,000 or $60,000 in deposits were drawn out Shortly after it was given out that the bank had been examined and found sound and was going on with its business, and the bank examiner publicly announced that the institution was solvent. The officers of the defendant knew of the run and understood that it had been successfuly met.

January 25, 1884, Davis wrote to the defendant's treasurer enclosing a new note and a draft for three months' interest. In reply to this, the defendant's treasurer returned the note and draft, stating that the trustees declined to renew the note and that the old note must be paid at once.    This action was taken in accordance with the vote of the investment committee, previously referred to.    January 30, 1884, the matter came before the investment committee and it was then decided that the note must be paid at once or satisfactory security given, and the defendant's treasurer so notified Davis on the same day.    February 6, Davis wrote the treasurer of the defendant that one of the signers of the note was out of town, and that upon his return satisfactory arrangements would at once be made.

In taking the aforesaid action in reference to this note, the investment committee acted merely upon their information that the signers were engaged in stock speculations and without information as to the particulars or results of those speculations.

In the latter part of February, 1884, the matter of this note was put into the hands of William G. Shaw, a member of the investment committee and an attorney, who thenceforth acted for the defendant in the matter.    February 29, Shaw went to St. Albans to get payment of the note, and it was arranged that the parties interested should meet.    Pursuant to this appointment he met the signers of the note at the rooms of Davis in the Welden House and requested them to pay the same.    They were not prepared to do so.    Armington and Smith claimed to be unable to contribute anything towards the sum due.    Davis was willing to pay one-half the debt, provided Sowles would pay the other half, and it was finally agreed that $1,000 in cash should be paid at that time, $500 by Davis and $500 by Sowles, and that another meeting should be held March 5th to arrange about the balance.    Thereupon Davis and Sowles each gave their check for $500 payable on the First National Bank of St. Albans. These checks were properly certified by that bank, and Shaw

thereupon agreed to hold them until the subsequent meeting of March 5th, when the payment of the note was to be completed.

March 5th, Shaw again went to St. Albans. The checks were then cashed, and it was arranged that Sowles and Davis should each take care of one-half of the balance remaining due on said note. Sowles proposed to mortgage real estate in St. Albans on Main St. and certain other real estate on Newton St., in the same village. For the purpose of investigating the title to this real estate, Shaw went to the town clerk's office in St. Albans. In making such examination he found the record of a mortgage of other property in St. Albans from Sowles to the First National Bank, dated January 17, 1884, and examined such record so far and only so far as to ascertain that it did not cover the property mentioned by Sowles on Main St. and Newton St.

March 11th, Shaw again went to St. Albans, having been necessarily detained in the meantime, and Davis then arranged by cash payment and satisfactory mortgage security for his half of the balance due on the note. Sowles gave Shaw his note for $1,600, secured by mortgage on the Main St. and Newton St. property, paid him $162.27 in cash and passed over a check for $250, drawn by Armington, one of the signers of the note. Thereupon the $5,000 note was surrendered as paid.

While the indebtedness represented by the $5,000 note and its renewals existed, Albert Sowles was reputed to be a wealthy man, and such reputation was known to the officers of the defendant, and none of them had reason to believe that he was not financially responsible, except so far as the facts above state should have put them upon inquiry.

In point of fact, Sowles had been insolvent for some time before the maturity of the note, in January, 1884, owing more than $140,000, while his assets were from $50,000 to $70,000. Some $25,000 of these assets were in real estate in St. Albans, Alburgh, and Swanton, and all of this, except that mortgaged to

the defendant as above, had been mortgaged to the First National Bank of St. Albans, and the mortgages deposited in the town clerks' offices as early as February 16, 1884.

After stating the foregoing facts in substance, the referee reported as follows :

"I find, if I may so find from the facts hereinbefore stated, consistently with their legal effect, and in such case only, that the part payment of $500, made by Albert Sowles to the defendant by his check given February 29, 1884, and cashed on March 5th following, was not made in the usual course of business or in the usual course of making payments; that the circumstances under which it was made put the defendant on inquiry as to said Sowles' insolvency ; that it was made by said Sowles while insolvent with a view to give a preference, and that the defendant received it having reasonable cause to believe said Sowles to be insolvent or in contemplation of insolvency; and that the cash payment of $168.27 and the conveyance in mortgage made by said Albert Sowles March 11, 1884, were made under circumstances which put the defendant on inquiry as to said Sowles' solvency; that they were made by said Sowles while insolvent and with a view to give a preference, and that the defendant received them having reasonable cause to believe said Sowles to be insolvent or in contemplation of insolvency."

The referee found that the value of the premises mortgaged to the defendant as above, at the time the mortgage was executed, was $2,000.

*William G. Shaw* and *Albert P. Cross, for the defendant.*

Whether one is put upon inquiry by a certain state of facts, is a question of law and not of fact. The finding of the referee in that respect is not conclusive unless the facts reported by him warrant it as matter of law. In this case they did not. *Read* v. *Moody,* 60 Vt. 668; *Bromley* v. *Hawley,* 60 Vt. 46.

The effect of putting one upon inquiry is limited to such facts as he could have ascertained by reasonable inquiry. *Blaisdell* v. *Stevens,* 16 Vt. 186, 187; *Stafford* v. *Ballou,* 17 Vt. 329; *Adams* v. *Sowles,* 33 Vt. 538; *McDaniels* v *Flower-brook Manufacturing Co.,* 22 Vt. 274; *Passumpsic Savings*

*Bank* v. *National Bank,* 53 Vt. 82; *Hill* v. *Murray,* 56 Vt. 177; *Lovejoy* v. *Raymond,* 58 Vt. 509.

The court will not infer one fact from another fact found by a referee. *Hammond* v. *Smith,* 17 Vt. 231; *Richmond* v. *Aiken,* 25 Vt. 324.

The amount recovered in this case cannot exceed the value of the mortgage note given to the defendant. *Cook* v. *Whipple,* 9 B. R. 155; Bump Bank. 8th Ed., 811.

*Wilson & Hall, Farrington & Post,* and *H. A. Burt,* for the plaintiff.

The facts reported by the referee not only tend to support his finding upon every point necessary to the plaintiff's right of recovery, but show that his findings were the only possible ones under the circumstances. *Denny* v. *Dana,* 2 Cush. 160 ; R. L. s. 1861 ; *Larkin* v. *Hapgood,* 56 Vt. 597 ; *Read* v. *Moody,* 60 Vt. 668 ; Bump Bankr., 829 to 834 inclusive ; *Toof* v. *Martin,* 13 Wall. 40 ; *Buchanan* v. *Smith,* 16 Wall. 277 ; *Wager* v. *Hall,* 16 Wall. 584 ; *Walburn* v. *Babbit,* 16 Wall. 577 ; *Forbes* v. *Howe,* 102 Mass. 427 ; *Alden* v. *Marsh,* 97 Mass. 160 ; *Buffum* v. *Jones,* 3 N. E. R. 718 ; *Mathew* v. *Riggs,* 5 N. E. R. 863 ; *Graham* v. *Stark & Savage,* 3 B. K. Reg. 357 ; *Scammon* v. *Cole,* 3 Cliff. 472 ; *Kingman* v. *Terrill,* 11 Allen 97; *Merchants' Nat. Bank* v. *Cook,* 95 U. S. 342.

The knowledge of Shaw, its attorney, was the knowledge of the defendant. *Bush* v. *Moore,* 133 Mass. 198 ; *Sartwell* v. *North,* 4 N. E. R. 51; *Mathew* v. *Riggs,* 5 N. E. R. 863.

The opinion of the court was delivered by

MUNSON J. This suit is brought by the assignees of the estate of Albert Sowles, an insolvent debtor, to recover certain sums paid, and the value of certain real estate conveyed, by said debtor to the defendant, within four months of the filing of the petition in insolvency. After giving the history of the indebtedness, and fully reporting the circumstances under which the pay-

ments and conveyances were made, the referee presents further findings as made by him, if he may so find from the facts before reported, consistently with their legal effect.

In this manner the referee finds as to the payment of five hundred dollars, that it "was not made in the usual course of business or in the usual course of making payments, that the circumstances under which it was made put the defendant on inquiry as to said Sowles' solvency, that it was made by said Sowles while insolvent with a view to a preference, and that the defendant received it having reasonable cause to believe said Sowles to be insolvent or in contemplation of insolvency."

The argument of the defendant with reference to this payment is based upon a construction of the clause above quoted which makes all the findings subsequent to the first one, conclusions drawn from the first. Assuming that everything rests upon the finding that the payment was not made in the usual course of business, the defendant contends that this finding is not justified by the facts reported; and insists further that even if the finding can be sustained, it cannot support the subsequent findings, or affect the legal nature of the transaction; for the reason, as asserted by the defendant, that the provision making a departure from the usual course of business *prima facia* evidence of fraud applies only to the transactions which come under the section in which the provision is found.

We see nothing in the clause quoted from the referee's report to justify the construction given it by the defendant. It is evident that the findings subsequent to the first are not deductions from the prior finding, but that each conclusion is an independent finding from the facts previously stated. If the finding that the payment was not in the usual course of business be rejected, there will remain the findings that the payment was made by the debtor while insolvent with a view to give a preference, and that the defendant received it having reasonable cause to believe the debtor insolvent or in contemplation of insolvency.

These are conclusions of fact, and the only question for the court is whether the circumstances reported by the referee tend to establish them. It is very clear that they do. It appears then that the debtor was insolvent at the time of the payment, that a preference was intended by the debtor, and that the creditor had reasonable cause to believe the debtor insolvent or in contemplation of insolvency. If these findings are sufficient to support a recovery, without an express finding that the creditor had reasonable cause to believe that the payment was made in fraud of the laws relating to insolvency, it is unnecessary to consider whether the payment was out of the usual course of business, or whether the provision making that fact *prima facie* evidence of fraud is applicable to such a payment.

As to the second cash payment and the conveyance in mortgage, the referee finds, with the proviso above stated, that they "were made under circumstances which put the defendant on inquiry as to said Sowles' insolvency, that they were made by said Sowles while insolvent and with a view to give a preference, and that the defendant received them having reasonable cause to believe said Sowles to be insolvent or in contemplation of insolvency."

The defendant claims as to both causes quoted from the report that the finding that the defendant was put upon inquiry is the basis of the subsequent findings; that such finding is not justified by the facts reported, and cannot be sustained; that in any event the finding cannot affect the question at issue in the absence of a further finding that the defendant would have ascertained the fact of insolvency upon inquiry. The view of the court as to the character of these findings is indicated above. The finding that the defendant had reasonable cause to believe the debtor insolvent or in contemplation of insolvency is not dependent upon the finding that defendant was put upon inquiry, but is a conclusion drawn directly from the facts previously stated. The finding that the defendant had reasonable cause to believe the debtor insolvent or in contemplation of insolvency

reaches beyond and renders inapplicable the questions raised by the defendant as to the duty of inquiry.

The report so construed presents distinct and positive findings, that Sowles was insolvent when the payments and conveyance in question were made, that such payments and conveyance were made with a view to give a preference, and that the defendant when receiving them had reasonable cause to believe that Sowles was insolvent or in contemplation of insolvency. But the plaintiffs are not entitled to recover unless the defendant had also reasonable cause to believe that the payments and conveyance were made in fraud of the insolvent law. The referee has not found this fact, unless it is covered by the findings above stated in their application to the case presented. It has been repeatedly held that a referee's report cannot be aided by inferring facts from the facts reported; and we cannot sustain a judgment for the plaintiffs on this report unless the fact not specifically stated is included in the findings made.

The first cash payment was the result of a demand for full satisfaction, and was taken in connection with an understanding that another meeting of the parties should be had at once, and that the balance should then be provided for. The proposed meeting occurred after a short delay, and the balance was then covered by the second cash payment and the conveyance in mortgage, and the note was thereupon given up as paid. These matters were all parts of one transaction, in which the purpose of the defendant throughout was to secure full satisfaction of its claim. So no distinction need be made between the two payments, in considering whether it sufficiently appears from the report that payment was received with reasonable cause to believe that it was made in fraud of the law.

The referee reports that Sowles had been insolvent for some time, owing debts amounting to more than twice the value of his assets. The questions presented for the determination of the court are not submitted in connection with any findings as to the business of the debtor, or the usual course of making pay-

ments as depending upon the usages of his business. There is nothing to indicate that in submitting his report the referee had in mind any other condition of insolvency than the one above stated, nor that his findings were presented in any other view. We consider, therefore, that the findings in question are to be construed as having reference to that condition of insolvency which is established by the report.

Then we have presented for consideration the question whether in the case of one who has received full payment of his demand, a finding that he had reasonable cause to believe the debtor insolvent in the ordinary sense, necessarily involves the fact that he had reasonable cause to believe that the payment was made in fraud of the insolvent law. It is evident that payment in full from one who has not the means to pay all his creditors in full must necessarily, in the event of insolvency proceedings, prevent that equal distribution of his assets which it is the object of the insolvent law to secure. Such a payment is, therefore, a payment in fraud of the law. It seems clearly to follow that when the payment received is payment in full, and the one receiving it has reasonable cause to believe that the payor is insolvent in the sense indicated, he has reasonable cause to believe that such payment is made in fraud of the law. The first two facts necessarily include the third.

But the defendant is found, in the words of the statute, to have had reasonable cause to believe the debtor "insolvent or in contemplation of insolvency." In view of this alternative finding, the question of the sufficiency of the facts reported must be considered as if there were no other finding than that the creditor had reasonable cause to believe that the debtor was in contemplation of insolvency. But we think no different conclusion can be reached when the question is thus considered. As before indicated, the findings are to be treated as referring to that condition of insolvency which the report discloses. It thus appears that the defendant, in receiving full satisfaction of its

demand, had reasonable cause to believe that the debtor was then contemplating a condition of insolvency in which payment in full to one would necessarily be at the expense of others; and such a payment could not be a payment in fraud of the law.

So the report is held to embrace all the findings necessary to enable the assignees to recover payments made and the value of property conveyed within four months before the filing of the petition. No further question arises regarding the two payments.

After petition, but before the adjudication of insolvency, the defendant sold the mortgage for its face value to one Merritt Sowles, who still holds it. The claim of the plaintiffs that they can recover in addition to the cash payments the full value of the premises mortgaged, cannot be sustained. If a recovery is to be had upon the mortgage transaction as for the value of property conveyed, the property of which the insolvent divested himself by the conveyance in mortgage will be determined by the amount which would be required to free the title from the incumbrance. If the mortgage were valid as against insolvency proceedings, the title would be in the assignees subject to the mortgage lien, and they could protect their interest in the property by paying the mortgage indebtedness. It is evident that the insolvent's deed did not take from the estate anything of greater amount than the debt secured. So the assignees cannot be permitted to recover more than the amount of the incumbrance, if they may recover on account of the mortgage in this proceeding. The law is designed merely to undo the transaction.

But the defendant insists that if the mortgage is void nothing passed by it; and that consequently the estate is without injury except from the cloud upon its title, and can have no other remedy than a proceeding to set aside the conveyance. The provision that certain transactions shall be void was made for the benefit of creditors, and must be construed as making such transactions voidable at the election of the assignee. But in treating

a preference as void, an assignee may either avoid the conveyance and retake the property, or suffer the conveyance to stand and recover the value of the property conveyed. The assignees are no more restricted to proceedings to set aside this mortgage than they would be restricted to a pursuit of the specific property in the case of an unlawful receipt and disposition of goods. The defendant having realized upon the mortgage security, we see no ground upon which it can contest the plaintiffs' right to recover the value of the mortgage interest as ascertained by its sale. We think the money received by the defendant on account of the mortgage stands the same as if received directly from the insolvent, and may be recovered by the assignees in this action.

It remains to determine the date from which interest should be allowed. As between Albert Sowles and the defendant, the payments were properly made and the mortgage valid. They were void only as against proceedings in insolvency, and upon being so treated by the assignees. Some action in disaffirmance of the transaction was necessary to charge the defendant with the payment of interest. As no date of an earlier demand is shown, the bringing of the suit is the only demand from which computation can be made. Interest is therefore allowed from the day of service.

*Judgment reversed, and judgment for plaintiffs for $2,368, and interest thereon from March 12, 1887.*