JOHN J. ALLEN *v.* CLARENCE D. GATES, et al.

May Term, 1900.

Present: ROWELL, TYLER, MUNSON, START, THOMPSON and WATSON, JJ.

Opinion filed September 21, 1900.

*Fixtures—Common law right of removal by tenant immaterial when lease is decisive*—Specific provisions in a lease as to the removal of structures to be erected by the tenant are controlling, and in respect to such removal the question of the tenant's rights at common law does not arise.

*The terms of a lease may be such that the landlord's liability to take and pay for fixtures arises at the election of the tenant*—When a

lease fixes the terms on which a building to be erected by the tenant shall at the election of the tenant be taken and paid for by the landlord, the building becomes the property of the landlord and a part of the realty, upon the due exercise of such election and due notice thereof; and nothing then remains to be done but for the landlord to pay pursuant to the provisions of the lease.

*An assignment of rents and profits may constitute an equitable lien*—An arrangement between the owner of real estate and one to whom he was indebted for improvements made thereon that the latter should collect the rents and profits in his own interest was held to be in effect an assignment of the rents and profits as security for the indebtedness and to create an equitable lien on the real estate in favor of the assignee.

*Possession notice of occupant's interest*—Possession may be such as to be notice during its continuance of the possessor's interest in the premises occupied.

*An assignment conveys the assignor's interest in respect to the thing assigned*—One who had an equitable lien on real estate and a right to collect rents and profits as security for a debt due him for a building erected by him on such realty made an assignment, in terms, of the building. This operated in equity as an assignment of the debt and of the security therefor, and could have no further force.

*Case of an equitable lien superior to a pre-existing mortgage*—Title derived through a mortgage was in the circumstances of this case held to be encumbered by an equitable lien created subsequently to the execution of the mortgage.

*Implied agreement to compensate for services and disbursements incident to a contractual undertaking*—In the case of an agreement between a debtor and a creditor that the creditor shall have possession of the debtor's real estate and collect rents and profits in his own interest as creditor, the creditor is, by virtue of an implied agreement, entitled to a reasonable compensation for his services in the care of the property and to the amount of his necessary disbursements in that behalf.

*Practice in the Supreme Court in Chancery appeals*—This was a bill to enjoin the defendants from moving a certain building. The defendants being without such right of removal, but having an equitable lien upon the property as security for a debt, and a right to collect rents and profits to be applied thereon, the case was remanded for an accounting as to the sum due the defendants in equity and for such further proceedings as equity and justice might require.

CHANCERY. Heard on bill, answer, replication and testimony, Chittenden County, March Term, 1900, *Taft,* Chancellor.    Decree that the bill be dismissed.    The orator appealed.

The bill prayed that the defendants might be enjoined "from removing and interfering with" a certain building, and a temporary injunction was granted in accordance with the prayer of the bill.

*Charles T. Barney* and *Seneca Haselton* for the orator.

*Hamilton S. Peck* for the defendants.

WATSON, J.    The orator has filed his bill, seeking to restrain the defendants from the removal of a certain building. The defendants made answer, and evidence has been taken. We find that in May, 1889, Leverett F. Englesby and Fred N. Whitney entered into a written agreement by them signed, sealed, and witnessed, but not acknowledged, whereby Whitney leased of Englesby a piece of land 25 feet front by 50 feet deep, on College street in the City of Burlington, for the term of five years ending April 1, 1894, at a monthly rent of nine dollars to be paid therefor.    The lease contains,. among other things, provisions as follows:

"The said Whitney is to have the right to build on said lot a wooden building practically in accordance with plans now drawn.* * * At the end of this agreement if the said Englesby and said Whitney cannot agree on a further arrangement, said Whitney shall have the right to remove said building within sixty days from the termination of this agreement, or to require of said Englesby that he buy said building at its exact cost less 20 per cent, and if he shall so require, said Englesby agrees to buy on said terms."

Whitney went into possession of the land under the lease, and in accordance with its terms immediately erected a building thereon; and when the building was completed he rented part

of it and published the "Burlington Clipper" in the other part, and had the exclusive use of the building and remained in possession thereof throughout the term of the lease, paying monthly ground rent as therein stipulated.

On March 8, 1894, Whitney notified Englesby that he should require him to take the building at the expiration of the lease according to the agreement. Englesby said that he was not then situated financially to take it and pay cash. Considerable correspondence was had between them touching the matter, resulting in an understanding that Whitney should collect the rents in his own interest; and he remained in possession of the building, looked after the renting of it, collected the rents, and paid the taxes and insurance thereon, until November 4, 1897, when he sold and conveyed it by warranty deed to the defendants under the name of the Burlington Granite Company, in consideration of $300 paid him therefor. This deed was recorded May 18, 1898. On April 21, 1893, Englesby gave a mortgage deed of the land thus leased, with other land, to George A. Eastman, conditioned for the payment of notes aggregating $25,000 and no mention was made in the mortgage of Whitney's ownership of the building, nor of his having any interest therein. The mortgage was assigned to H. C. Ryan, May 8, 1893, and to the Massachusetts National Bank of Boston and the National Bank of Chester in this state, on March 1, 1894. Englesby conveyed the property by quit-claim deed to Charles T. Barney, May 28, 1896, and he conveyed it in like manner to Florence H. Englesby, the wife of Leverett F., June 2, 1896. All of these conveyances and assignments were duly recorded.

At the March term, 1897, of the Court of Chancery in Chittenden County, the banks obtained a decree of foreclosure of the mortgage, which became absolute April 21, 1899, and a

15

certified copy thereof was recorded in the land records the day following.    Florence H. Englesby, and the Howard National Bank a subsequent mortgagee, were made parties defendant in the foreclosure proceedings.    Whitney was not made a party.    Other persons became interested in the equity of redemption by conveyance, during the pendency of the suit, or before the decree became absolute, including the orator who was the owner thereof at the time of the commencement of the suit at bar, but, as such interests were barred by that decree, it is unnecessary to more particularly notice them.    The banks conveyed the property to P. H. Flynn, May 8, 1899, and he conveyed the building in question to the orator June 21, 1899.

Prior to taking the assignment of the mortgage, the banks were fully informed concerning the agreement under which the building was erected, and knew that Whitney was in possession claiming to own it.

When the building was conveyed to the defendants, the key thereto was delivered to them, they went into possession, and made repairs thereon intending to move their business thereinto; but in December following they were notified that the orator owned the property and they must pay a rent of $300 a year if they moved their business into the building.    Thereupon the defendants made arrangements to move the building elsewhere, and were preparing so to do when this suit was brought and they were temporarily enjoined.

The purchase by Flynn was through the orator as his agent; and in the performance of his duties as such agent, and before the transaction was consummated or deed given, the orator acquired full knowledge of Whitney's rights and interests in the property, and knew that he was in possession collecting rents in his own interest; and that Whitney thus remained in possession collecting rents until he sold and conveyed

to the defendants, was concurrently within the orator's knowledge.

Under the provisions of the lease, Whitney had a right to erect the building on the land leased, and at the end of the term, if the parties thereto could not agree on a further arrangement, he had the privilege of removing it within sixty days from the termination of the lease, or to require of Englesby that he buy it at cost less 20 per cent, and if so required Englesby agreed to buy on those terms.

The question of when at common law a tenant may remove a building erected by him on the leased premises, and hold it as personalty, does not arise; for when the parties to a lease make specific provisions therein relative to the tenant's erecting buildings or other structures on the property leased, and the time of removing the same or of otherwise disposing of them, such provisions are of binding force between the parties, and are controlling: *Dame* v. *Dame,* 38 N. H. 429; 75 Am. Dec. 195; *Town of Lemington* v. *Stevens,* 48 Vt. 38.

No other arrangements being made, Whitney required Englesby to take the building at the end of the term, and gave him notice to that effect, by force of which the building then became the property of Englesby and a part of the realty, and nothing remained to be done but for him to pay therefor, pursuant to the provisions of the lease, (*Hood* v. *Hartshorn,* 100 Mass. 117); but as he was not then in condition to pay in cash, an understanding was reached between them whereby Whitney was to collect the rents on the property in his own interest.

It is manifest that the parties intended thereby that Whitney should have such rents to apply towards the payment of the debt due him from Englesby for the building; and it was, in effect, an assignment of the rents and profits to Whitney as security for the debt, and created an equitable lien on the prop-

erty in his favor, upon the maxim—Whenever persons agree concerning any particular subject, that a Court of Equity, as against the party himself, and any claiming under him voluntarily or with notice, raises a trust.

In *Legard* v. *Hodges,* 3 Bro. Ch. 441, Lord Loughborough, holding that a covenant to appropriate one-third of the produce of certain real estate to raise a sum of money, is not a mere personal covenant, but creates a lien upon the land, said: "I take the doctrine to be true, that where parties come to an agreement as to the produce of land, the land itself will be affected by the agreement."

In *Abbott* v. *Stratton,* 3 Jones & L. 603, a letter of attorney was given authorizing the one to whom given, to retain without further authority out of the annual rents and proceeds of certain lands and premises, as received from time to time, a certain sum to apply in maintaining and keeping up a certain policy of insurance, and in payment of the interest on a certain bond and judgment. Lord St. Leonards said: "I do not doubt that this is a clear agreement to secure the money on the land; and, therefore, it is, I think, an equitable mortgage;" and in *ex parte* Wills, I Ves. Jr. 162, Lord Thurlow said: "An assignment of rents and profits is an odd way of conveying; but it amounts to an equitable lien; and would entitle the assignee to come into equity and insist upon a mortgage." See also, *Smith* v. *Patton,* 12 W. Va. 541; *Fletcher* v. *Morey,* 2 Story, 555; 3 Pom. Eq. Jur. sec. 1237.

The evidence does not show notice in fact to the mortgagee, Eastman, nor to his immediate assign, but the building was erected before the execution of the mortgage, and the premises were then in the possession of Whitney and thus remained until he sold and conveyed the building to the defendants November 4, 1897. Such possession was sufficient to put them upon inquiry, and was constructive notice to each of them

of such legal and equitable rights as Whitney possessed: *Perkins* v. *West,* 55 Vt. 365; *Canfield* v. *Hard,* 58 Vt. 217. And his possession after the expiration of the term was not only notice of all his rights and equities growing out of the original agreement, but also of such additional or different rights and equities as he acquired under the subsequent agreement, for an inquiry then made would have disclosed the whole: 2 Pom. Eq. Jur. sec. 625; *Cunningham* v. *Pattee,* 99 Mass. 248.    The banks and their assigns, including the orator, also had actual notice, and by their various and successive acts recognized Whitney's rights in the premises; and they knew that his rights and equities passed to the defendants by conveyance.    The orator stands no better in a court of equity than Englesby would have stood had he continued to own the property.

The conveyance to the defendants from Whitney was, in equity, an assignment of the debt due him from Englesby for the building, together with such rights and interests in the property as he had under his equitable lien thereon as security for the payment of the debt, with a right to the rents and profits to be applied toward the payment thereof.    This was all Whitney had, and it is a well known rule that no man can transfer a greater right or interest than he himself possesses.    Such rights and interests as the defendants have, do not give them the power to remove the building, but resort must be had to a Court of Equity, if need be, for enforcement by whatever means they will be rendered more efficacious in doing justice to the persons interested.

At the contract price, there was due from Englesby to Whitney for the building April 1, 1894, the sum of $1,131.

From that date until his conveyance to the defendants, November 4, 1897, Whitney was acting under the arrangement with Englesby whereby the former collected the rents in his

own interest; and from the conduct of the parties, it is evident they mutually understood that in so doing he should remain in possession caring for the property.    This gave the transaction touching the care of the property the force of a contract, and the law implied a promise that Whitney should be allowed for his necessary disbursements in the care and protection of the property, with reasonable compensation for his services.    In accounting for rents received, he has charged for taxes and insurance paid on the property, and for services, computing interest as the law requires.    We think the sum charged for services is reasonable in the circumstances, and that the accounting is upon a just and equitable basis.    After making all proper applications and deductions, there was due Whitney on the building on the last named date, the sum of $502.19.

The evidence before the court concerning the repairs made by the defendants upon the building, and the rents since they took possession of it, is insufficient upon which to determine the equities existing between the orator and the defendants in an accounting between them; the case therefore should be referred to a Master for an accounting upon the sum due the defendants in equity; and then to be proceeded with as equity and justice may require.

*Decree reversed and cause remanded with mandate.*

*Thompson, J.* deceased before the case was determined.