ALBERT SOWLES AND JENNIE P. DENNEY, APLTS. *v.* H. E. LEWIS AND C. S. L. LEACH, ASSIGNEES.

May Term, 1902.

Present: ROWELL, C. J., MUNSON, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed September 10, 1902.

*Insolvency—Jurisdiction of claims—Assignee—Affirmance of fraudulent mortgage—Conveyance by insolvent—Compromise of claim—Surety—Findings of referee—Avoiding purchase by assignee—Equity—Accounting—Motion to recommit.*

Commissioners appointed under V. S. 2143 have no jurisdiction of claims created by an assignee in insolvency in the settlement of the estate. Such claims should be made a part of the assignee's account, to be passed upon by the judge of the court of insolvency under V. S. 2148. *Sowles v. Flinn,* 63 Vt. 563, explained.

When an assignee in insolvency prosecutes to judgment a suit to recover the value of property mortgaged by the insolvent, on the ground that the mortgage is an unlawful preference, he thereby affirms the mortgage as a valid incumbrance.

The insolvent's right of redemption in the property covered by a mortgage so affirmed is in the assignee, and the insolvent's subsequent quitclaim deed conveys no interest in such property. If such mortgage has been assigned to a third person for the insolvent's benefit, and the law day has passed, such subsequent deed conveys whatever rights the insolvent had under such assignment,

and upon redemption of such mortgage by the assignee in insolvency, the amount paid is held in trust for the grantee in such deed.

When an insolvent has procured his mortgage to be assigned to a person for his benefit by giving that person his note therefor, and his assignee in insolvency redeems such mortgage, the assignee in insolvency is not required to discharge such note.

The right of an assignee in insolvency to compromise a claim against the estate under direction given by the judge of the court of insolvency pursuant to V. S. 2107 cannot be questioned by the insolvent; nor is the propriety of the action of the court of insolvency in this behalf within the jurisdiction of a referee appointed on appeal from commissioners.

The question whether an assignee in insolvency can purchase and hold a claim against the estate is not within the province of such referee.

When a debt against an insolvent is secured by mortgage and also by the obligation of a surety, and the avails of the security are applied on the debt by the party holding it, the surety can prove the balance of the debt which he has to pay; and if he has proved the whole debt, he should ask leave of the court of insolvency to withdraw his former claim and prove a claim for the sum so paid.

A finding by a referee that a certain expected compromise "may have influenced" the insolvent in giving his consent to the purchase of a part of the land of the insolvent estate by the assignee in insolvency, does not establish the fact that he was so influenced.

Nor does such finding amount to a finding that the insolvent is not estopped from attempting to avoid such sale.

The purchase by an assignee in insolvency of property of the estate is, in a court of law, treated as valid unless actual fraud is shown.

There being no fraud in the sale here in question, the insolvent's remedy, if any, is in the court of chancery.

When an insolvent, after his petition in insolvency is filed, sells a note belonging to his estate which his assignee is compelled to purchase, he is chargeable with the amount paid by the assignee therefor, in an accounting between them.

The amount found due on such a note at the time of its sale by the insolvent, with the other facts found by the referee, sufficiently indicate an intention to assess the damages on this basis.

It cannot be said that the allowance by a referee of an item not included in the specification was legal error.

A motion to recommit the report of referee is addressed to the dis-
cretion of the court, and no exception lies to the decision thereon.

APPEAL from commissioners·in insolvency. Heard on the
report of a referee, the appellants' motion to recommit the
same and exceptions thereto, at the March Term, 1902, Frank-
lin County, *Tyler*, J., presiding. The motion to recommit was
denied, the exceptions overruled, and judgment rendered on
the report and ordered certified. The appellants excepted.

*E. A. Sowles, H. M. Mott* and *H. C. Royce* for the ap-
pellants.

Albert Sowles had, through his brother Merritt, pur-
chased and owned the note and mortgage given by him to the
Burlington Savings Bank. He gave his brother Merritt his
note therefor, and Merritt had the mortgage transferred to
himself. . When the assignees redeemed this mortgage they did
not discharge Albert's obligation given therefor. As between
the assignees and Albert this amounted to a fraud, and they
should not be allowed to take advantage of their own wrong
and claim an interest in the property adversely to him.

The findings of the referee amount to a finding that the
insolvent's consent to Lewis' purchase and holding of the
Foundry Street property was given and continued by reason of
a prospective compromise, in reliance upon it, and for the pur-
pose of carrying it out. Therefore, if Lewis is to be allowed
to keep this property he is bound to carry out the terms of the
compromise agreement. Bigelow on Estp. 684, n. 4, and
cases cited. *French* v. *Barre,* 58 Vt. 567; *Soper* v. *Frank,* 47
Vt. 368.

The Austin note and mortgage were paid in full to the as-
signees. The insolvent, therefore, is not chargeable with any-
thing collected on them. If chargeable at all, it would be for
the sum which the assignees necessarily paid in buying back the

claim. This sum is not found. Therefore, there is no basis for assessing damages under this item. The George Sowle judgment should not have been allowed, for the simple reason that the assignees did not claim it, and did not include it in their specification.

The referee had no jurisdiction over the compromise of the claim of the Government against the insolvent. It was in no sense a claim of the assignees against the insolvent. *Sowles* v. *Flinn*, 63 Vt. 563; *Sowles* v. *Bailey*, 69 Vt. 515.

The referee had no jurisdiction to allow the assignees for the purchase of the claim of the National Union Bank. "Lewis paid for it and owns it."

Lewis' own claim against this estate was secured, and from the securities he received a benefit of $2,895. He proved his whole claim, so the result is that he seeks a dividend on the whole claim and seeks to hold the benefit of the security. The security was not disposed of as required by law, and he should account for the amount received therefrom.

*Henry A. Burt, Farrington & Post* and *Alfred A. Hall* for the appellees.

The referee had no jurisdiction to consider matters pertaining to the assignees' accounts, employment of attorneys, and insolvent's services. *Sowles* v. *Flinn*, 63 Vt. 563.

The suit by the assignees against the Burlington Savings Bank left the mortgage good and valid, with a right of redemption in the assignees. The assignment of that mortgage carried to Merritt Sowles no greater interest than the Bank held, and upon redemption of that mortgage in Merritt Sowles' hands, it left him with no further interest in the property.

The insolvent cannot question the wisdom of the compromise of the United States judgment. It was done under the authority of the court and the referee finds that the insolvent has

put himself in a position where he is estopped from questioning the transaction.

H. E. Lewis is clearly entitled to prove against the estate the sum which he was compelled to pay for the benefit of the insolvent. Though he has proved for the whole amount of this debt, it is for the court of insolvency to say whether he shall be allowed to change his claim and stand as a creditor. It will be observed that he never had any securities in his hands. He was not in a position to surrender any security or apply for its sale. The Bank held the security, and the Bank received the avails of it.

The insolvent's claim for services are matters pertaining to the assignees' account, and should be raised in the court of insolvency.

The referee has found that the Foundry Street property was purchased by Lewis under an agreement and arrangement to which the insolvent was a party, for more money than was offered by anyone else; that Mr. Lewis has since built two buildings on the premises. It is too late for the insolvent to question this transaction.

The insolvent converted the Austin note and mortgage. He should account for their value.

WATSON, J.    This case came into the County Court under the provisions of V. S. 2145, by appeal from the the decision of commissioners appointed by the Court of Insolvency under the provisions of V. S. 2143, by mandate from this Court in *Sowles* v. *Bailey,* 69 Vt. 515, 38 Atl. 237.    A hearing was had before a referee, and upon the coming in of his report, exceptions thereto and a motion to recommit were filed by the appellants. The motion was denied, exceptions were overruled, judgment was rendered on the report according to the findings and holdings of the referee, and ordered to be certified

to the Court of Insolvency, to all which the appellants excepted. Upon the questions thus raised, the case is here.

Regarding some of the matters upon which the referee heard evidence and found facts, and some upon which he refused to hear evidence under exceptions by the appellants, the question of jurisdiction is interposed. In this respect, the construction of the same statute was before the Court in *Sowles* v. *Flinn*, 63 Vt. 563, 22 Atl. 620. It was there held that the law had "reference solely to claims, liens, and other matters in difference arising in the settlement of an insolvent debtor's estate, in respect of the property of the debtor which is conveyed to the assignee by the deed of assignment" from the Court of Insolvency; and that all questions which arise in reference to the services of an assignee, and the payment of any claims created by him in the administration of the estate, should enter into the accounts of the assignee, and as such, be audited and passed upon by the judge of the Court of Insolvency under the law as contained in V. S. 2148.

That such was the holding in that case is not disputed; but it is contended that the case of *Sowles* v. *Bailey*, before cited, is in conflict therewith, and, being a later case, it must prevail; and especially so, since the mandate thereof under which the commissioners were appointed is controlling. But an examination of the latter case shows that no such question of jurisdiction was there involved; for the subject matters upon which the petition was based, were in respect to the rights and interests of the relators in certain real estate, debts, and claims, which were claimed by the assignees to belong to the insolvent estate. There was no question apparently having its basis in the administration of the estate before the Court. The mandate must be construed with reference to the case as presented, and when so construed, instead of that decision being in conflict with *Sowles* v. *Flinn*, it is in accordance therewith. The

referee therefore properly refused to take cognizance of matters touching the insolvent's claim for services and for the support of himself and his family; also of matters pertaining to the employment of attorneys by the assignees and the assignees' accounts.

The petition in insolvency was filed April 12, 1884. On the eleventh day of the preceding month the insolvent mortgaged a part of his real estate to the Burlington Savings Bank to secure the payment of a prior indebtedness due from him to the bank. After the filing of the petition, and before the debtor was adjudged insolvent, Merritt Sowles, the insolvent's brother, and an officer of the First National Bank of Plattsburg, took an assignment of this mortgage in the interest of the insolvent. Merritt, through the bank, furnished the money for this purpose, and the insolvent gave him or the bank his note for that amount. A suit was brought by the assignees against the Burlington Savings Bank to recover, among other things, the value of the mortgaged premises, as an illegal preference under the law of insolvency. Therein it was held that the mortgage constituted such a preference, and that it was optional with the assignees in such circumstances either to avoid the conveyance and retake the property, or suffer the conveyance to stand and recover the value of the property conveyed. It was further held that treating the mortgage as valid against the insolvency proceedings, the title to the property would still be in the assignees, subject to the mortgage lien, and that as they could redeem by paying the mortgage debt, they could recover on account of the mortgage no more than the amount of the incumbrance; and thus this item entered into the judgment rendered. *Lewis and Leach, Assignees* v. *Burlington Savings Bank,* 64 Vt. 626, 25 Atl. 835. By bringing such action to recover the value of the property conveyed, and

so prosecuting it to judgment, the assignees elected to allow the conveyance to stand, and they thereby affirmed the mortgage as a valid incumbrance on the property. This being all the interest the bank had under the mortgage, it was all that could be conveyed by the assignment from the bank to Merritt Sowles. *Allen* v. *Gates,* 73 Vt. 222, 50 Atl. 1092. When the insolvent had given the mortgage, his only interest in the property was the equity of redemption, and this was conveyed by the Court of Insolvency to the assignees. It follows that the insolvent had no right or title in the premises to convey to his daughter Jennie P. (Sowles) Denney, and that she took none by his quit-claim deed of January 30, 1893, unless it was some interest acquired by him under the assignment of the mortgage to Merritt. The note secured by the mortgage being payable on demand, the law day had passed, and the quit-claim deed conveyed to the daughter whatever rights the insolvent had under the mortgage by virtue of this assignment. *Oakman* v. *Walker,* 69 Vt. 344, 38 Atl. 63. Nor did the fact that such rights did not appear of record make any difference. *Sowles* v. *Butler,* 71 Vt. 271, 44 Atl. 355. However, under the assignment,—which was recorded,—the mortgage stood in the name of Merritt Sowles, and he held it in trust for the insolvent until the quit-claim deed was given by him to his daughter, and thereafter it was held in trust for her.

Merritt brought and was pressing foreclosure proceedings in his own name, with the insolvent, his daughter, the assignees, and one Herbert Austin, to whom further reference will be made herein, as parties defendant. During all the time that the mortgage was so held in trust, the right of redemption was in the assignees, and they redeemed the property by purchasing the mortgage and note secured thereby, with a small mortgage given to the insolvent by Herbert Austin, and all the claims proved against the estate which had been purchased by and

assigned to Merritt, and which were owned by the First National Bank of Plattsburg, paying for the whole many hundreds of dollars more than the amount due on the first named mortgage.   It does not appear that these claims proved were other than of the ordinary character of unsecured claims, the value of which depended upon prospective dividends from the estate. The fair inference is that in this purchase the mortgage to the Burlington Savings Bank was considered at the amount due thereon, and therefore paid in full by the assignees.   Merritt had the right to receive the money thus paid in redemption, and to discharge, or assign to the assignees, the mortgage when redeemed.   It follows that whether the quit-claim deed was notice to the assignees that the daughter claimed an interest in the mortgage debt is immaterial.   None of the other claims proved against the estate which stood in the name of Merritt were secured on the land described in the quit-claim deed; hence the deed could not be notice that she claimed any interest in them.

It is argued that when the assignees redeemed the property, knowing that Merritt had taken the assignment of the mortgage in the interest of the insolvent, without discharging the note given by him to Merritt or the bank therefor, it amounted to a fraud upon the insolvent, as between him and the assignees, which should not be permitted to their advantage by giving them any interest in the property adversely to him. But no such fraud is apparent.   The insolvent became the owner of the mortgage by giving his note, and the mortgage was assigned to Merritt, who held it in trust for the insolvent and later for his assign.   After the trustee received payment of the mortgage debt, the money was held by him in trust just as the mortgage had been.   There is no principle in law or equity requiring the assignees to discharge the insolvent's note given therefor.

For several years before the insolvency proceedings, the insolvent had been cashier of the First National Bank of St. Albans. When the petition was filed there was a suit pending in the Circuit Court of the United States in favor of the United States against the insolvent, and before the adjudication upon the petition, a judgment was rendered in the suit against him, amounting with costs to $2,158.76. In that suit $3,000 in bank bills were attached and a receiptor taken therefor. The bank went into the hands of a receiver in April, 1884. This judgment was proved for the United States as a preferred claim, and filed with the Court of Insolvency October 21, 1886. On March 11, 1889, the assignees petitioned the court of insolvency for leave to compromise the claim, upon an offer they had received, by the payment of $1,515.55 as a preferred claim. Such leave was granted, and it was compromised accordingly by paying thereon the sum named. By V. S. 2107, the assignees, under the direction of the judge of the Court of Insolvency, were authorized to compound and settle the claim as was most for the interest of the estate. Whether the Court should or should not have granted such authority in this instance is a matter without the jurisdiction of the referee. Moreover, the right thus to compound and settle a claim cannot be questioned by the insolvent. *National Bank v. Waite,* 57 Vt. 608.

In winding up the affairs of the National Union Bank of Swanton, quite a large claim proved against the estate of the insolvent was ordered to be sold at auction. By an agreement between the insolvent and the assignees, the claim was bid off for the three at a price agreed upon, but assignee Lewis paid for it and owns it. There was no dispute or disagreement regarding its allowance against the estate. It was proved by the bank, so far as the case shows, without objection. If Lewis had the right to purchase and hold it personally, a question not

properly before us and upon which we give no intimation, then he stands in the place of the original creditor. . But if, because of his trust relation, he could not so purchase and hold it in the circumstances of the transaction, then his purchase would enure to the benefit of the estate. In neither event was it a matter within the province of the referee.

At the time of filing the petition, Lewis had given his notes to or in the interest of the insolvent for $6,395. The insolvent had given him a writing agreeing to pay and protect him against these notes, and, as between them, the notes were the insolvent's to pay. This claim was proved by Lewis, and voted on by his attorney. The notes were held by the First National Bank of St. Albans, and at that time suits thereon had been commenced by it against Lewis, who took no security for signing them. While the bank held the notes, and on January 14, 1884, the insolvent conveyed to it by three mortgages quite a large amount of real estate, to secure it against his liabilities of almost every character. He also conveyed to it, for like security, considerable personal property. When the receiver of the bank undertook to set up these mortgages and transfers of personal estate, Lewis claimed the security so given, if valid, enured to his benefit *pro rata.* On such claim being made, in compromise with the receiver, Lewis had to pay on the notes $3,500. He now seeks to be paid a reasonable dividend on this sum. It is contended by the insolvent that Lewis realized from these securities $2,895, the difference between the amount of his claim proved and the sum he paid on the notes; and that, as the security was not disposed of in the manner pointed out in the insolvent law, Lewis proved his whole claim and realized on the security also, which a creditor cannot do. *International Trust Co.* v. *West Rutland Marble Co.,* 63 Vt. 626, 22 Atl. 273. But we do not adopt this view. Lewis held no security to release before he could prove his claim. The securities were

held by the bank upon these notes with other liabilities of the insolvent; and under the claim of Lewis that the securities should be applied *pro rata*, the receiver so applied them; whereby to that extent the notes were paid by the insolvent whose duty it was to pay them.   The balance of $3,500 Lewis had to pay, and he should move in the Court of Insolvency for leave to withdraw his former claim and prove a claim for the sum so paid.   Nor does the fact that the case does not show whether the insolvent indorsed these notes or not change the situation; for it is found that they were his to pay.   Hence, as between him and Lewis, he was the principal debtor and Lewis stood in the relation of a surety; and manifestly this relation was known or recognized by the receiver of the bank in the settlement and application of the securities.   This claim is within the provisions of the law by which "A person liable as bail, surety, guarantor, or otherwise for the debtor, who has paid the debt or any part thereof in discharge of the whole, may prove such debt for the amount paid, although such payments were made after the proceedings in insolvency were commenced."   V. S. 2074.

In carrying out the compromise of January 31, 1889, with the receiver of the First National Bank of St. Albans, the receiver, that he might raise money to pay to the assignees, conveyed the home place and other property to Merrill J. Hill for the insolvent who now claims the Foundry Street property through that conveyance.   The deed refers to the mortgage to the bank for a description of the lands conveyed.   But the referee has found that the Foundry Street property was not covered by the mortgage, and that it would still be a part of the insolvent estate, except for the purchase by assignee Lewis.

On November 24, 1896, the insolvent urged assignee Leach to consent to a sale of this property for $700.   This led to an agreement later between the insolvent and the assignees

to sell it for $1,000, and Lewis agreed to purchase.  On appli-
cation by the assignees, the Court of Insolvency granted leave
to sell at that price, and it was conveyed by the assignees to
Hill, and by him to Lewis who paid $1,000 therefor into the
estate.  This was a fair price for the property at that time, and
more than had been offered to the assignees by anyone else.
The insolvent knew of the sale, fully approved of it, and con-
sented to it.  Lewis has since built two buildings on the prem-
ises.

In 1889, the insolvent made a proposition to the assignees
for a compromise and settlement of the estate.  Estimates of
the available assets, of the claims proved, and of the expenses
of administration were made.  The assignees thought a settle-
ment would be reached, and to that end they transferred cer-
tain claims and property to Hill, to be held by him and used in
carrying out the compromise.  Although Hill was not to use
these transfers unless the compromise was completed, he trans-
ferred some of the claims to the insolvent, in the expectation
that it would be perfected, but it was not done.  The terms of
the attempted compromise were never fully agreed upon.  On
August 2, 1894, when the affairs of the estate had somewhat
changed, the insolvent submitted another proposition for a
compromise and settlement.  This resulted in a corrected pro-
posal in more definite form on November 15, 1895, designated
"An estimate for compromise purposes only," on the back of
which was indorsed an agreement in writing signed by assignee
Lewis, and by the insolvent for himself and for Merritt Sowles
and the First National Bank of Plattsburg.  It was therein
stipulated that, after the payment of the expenses incurred by
the assignees in the estate, a dividend should be declared upon
the claims proved, and that the estate should be closed immedi-
ately.  But it is found that the insolvent, when he signed this
agreement, had no authority to bind either Merritt or the bank,

and no claim is made that either was bound thereby. Nor does the insolvent claim that the instrument, by virtue of its execution, is of binding force as between him and the assignees. It is contended, however, that when the history of the whole transaction is considered, beginning with the attempted compromise of 1889, the terms of which were not fully agreed upon, but under which both parties took through the medium of Hill, and have since retained transfers of certain property that was to be theirs when the compromise was perfected, and culminating with the "Estimate for compromise purposes only," in November, 1895, the parties here have by their own conduct so recognized and ratified the agreement that they are now mutually bound by it; and that this applies with especial force to the purchase of the Foundry Street property by assignee Lewis, upon the principle that one who accepts the terms of a deed or other contract must accept them as a whole; that he cannot accept part and reject the rest.

It was claimed for the insolvent before the referee that his consent to the purchase of the property by Lewis was given in carrying out the expected compromise. The referee finds that the expected compromise may have influenced the insolvent in giving his consent, and then adds, "but it cannot be withdrawn after the situation has been so changed that Lewis cannot be placed in *statu quo.*" It is now urged that this amounts to a finding that his consent was given and continued by reason of the compromise, in reliance upon it, and for the purpose of carrying it out.

The finding that the insolvent *may* have been so influenced does not establish the fact that he *was* so influenced. It may have been otherwise, notwithstanding. When the insolvent seeks to stand upon a recognition and ratification of the compromise agreement, the burden is upon him to show such facts as will give it binding force in that way. We do not think

the language used is fairly subject to the construction contended for.   What the referee says to the effect that the consent cannot be withdrawn after the situation has been so changed that Lewis cannot be put in *statu quo* is but a conclusion of law, which neither adds to nor takes from the facts found upon which the conclusion is based.   Such a recognition and ratification as would make that agreement binding between the parties here does not appear.

It is further urged, in connection therewith, that if the agreement was not thus made binding, then, since the Foundry Street land was trust property, an assignee could not be a purchaser, and that anyone interested in the trust estate may avoid the sale, unless he is estopped by his own conduct from so doing.   Here again reliance is placed upon the referee's findings, the claimed effect of which is that the insolvent has not so estopped himself, provided the assignee can be put back in the situation where he was before; and it is argued that he can be by being allowed for his betterments.   But, as in the other instance, the construction is not warranted; and if it were, being but a conclusion of law, no fact is established thereby.

The record shows that all the claims provable and proved against the estate have been purchased or settled by the assignees with the approval of the insolvent, except the claim proved by assignee Lewis.   This being so, the only parties interested in the estate, as it now stands, are the assignees, Lewis personally, and the insolvent.   Lewis is the only creditor whose claim has not been thus purchased or settled, and he is not in a situation to disapprove of his own acts in the purchase of trust property.   If there should be a surplus after the settlement of all claims and the payment of administration expenses, it would go to the insolvent.   Assuming that such surplus exists, the insolvent stands in the relation of *cestui que trust*.   It is well settled that a purchase by a trustee or other person standing

in like relation, at his own sale of trust property, is not void; but it is generally, though not always, voidable by the *cestui que trust* within a reasonable time. In a court of law, however, such a sale is treated as valid unless actual fraud is shown. No such fraud appears in connection with the sale in question. The remedy, if any, is in a Court of Chancery, where the equities may be adjusted and justice done to all parties before the Court in their different relations by a single decree with the power to enforce it. *Thorp* v. *McCullum,* 1 Gilmon 614; *Doe* v. *Henry,* 3 Ind. 104; *Davone* v. *Fanning,* 2 John. Ch. 252; *Jackson* v. *Van Dolfsen,* 5 Johns. 43; *Fox* v. *Mackreth,* 1 Lead. Cas. Eq., notes 256-257; *Jennison* v. *Hapgood,* 7 Pick. 1, 19 Am. Dec. 258; *Yeackel* v. *Litchfield,* 13 Allen, 417.

Before insolvency proceedings were instituted, the insolvent made a contract with Herbert Austin to sell him a strip of land off that covered by the mortgage to the Burlington Savings Bank. A few days after the petition was filed the insolvent deeded this strip to Austin, and took his note for $163, with interest annually, therefor, secured by mortgage on the land deeded. In September following, the insolvent sold the note and mortgage to his brother Merritt of whom the assignees bought them in their purchase of August 8, 1896. The fact is found that it was necessary to include them in making that purchase and settlement with Merritt and the First National Bank of Plattsburg. It is also found that the note and mortgage were a part of the insolvent estate conveyed by the Court to the assignees, and that the insolvent, by selling them to Merritt, converted them to his own use, compelled the assignees to purchase them, and should account therefor. The insolvent contends that he is not thus chargeable because the note and mortgage were subsequently paid to the assignees. But this contention is untenable. The note and mortgage were owned by the assignees as a part of the estate, and when paid

they received only the amount due on the mortgage debt. Nothing was received for what they were obliged to pay Merritt therefor.   To this extent they were damaged by the insolvent's conversion, and he should account accordingly.

But it is further contended that the damages have not been assessed.   The referee has found that the amount due on the note at the time the insolvent sold it was $167.14, and from the connection of this finding with the other facts regarding the note and mortgage and the conversion of them, we think it may be fairly said that he intended thereby to assess the damages on the basis indicated.   This is the more apparent from the fact that the note, when purchased by the assignees, had due upon it nearly two years more of interest which in this accounting might properly have been included in the damages had they paid Merritt the full amount then due thereon.

The referee finds that the insolvent received on the judgment against George H. Sowles $180.06, for which he should account as of August 12, 1889.   It is urged that he should not be thus held to account, for the sole reason that the item was not included in the assignees' specifications, and they did not claim it.   Although the item may not have been thus included, it was allowed by the Court below, and we cannot say that such allowance was legal error.

The overruling of the motion to recommit, for the purpose stated in the amendment thereto, was within the discretion of the Court to which exception will not lie.

This disposes of all points relied on in the appellants' brief.

*Judgment of the County Court reversed, and judgment that Jennie P. (Sowles) Denney has no interest in the land and premises mortgaged to the Burlington Savings Bank, by the* quit-*claim deed from Albert Sowles to her, dated June 30, 1893, and that said land and premises are a part of the insolvent estate in the hands of the assignees; that the insolvent,*

*Albert Sowles, has in his hands moneys, consisting of the various items found by the referee, amounting in the aggregate, with interest to August 21, 1902, to the sum of $4,220.09, which he withholds from said assignees without right; and that the appellees recover their costs, except in the Supreme Court, and that in the Supreme Court the appellants recover their costs.  Judgment to be certified to the Court of Insolvency.*